IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


**CAROL J. HOWARD,**

            **Plaintiff,**

**v.**                              //    **CIVIL ACTION NO. 1:15CV135**
                                              **(Judge Keeley)**

**THE CITY OF CLARKSBURG,**
**a West Virginia municipal**
**corporation,**

            **Defendant.**


**MEMORANDUM OPINION ORDER GRANTING THE DEFENDANT'S MOTION TO
DISMISS [DKT. NO. 12] AND DISMISSING CASE WITH PREJUDICE**

Pending before the Court is the motion to dismiss the amended complaint filed by the defendant, the City of Clarksburg ("City") (Dkt. No. 12). For the following reasons, the Court **GRANTS** the motion and **DISMISSES** the case **WITH PREJUDICE**.

## BACKGROUND

The Court's recitation of the facts is taken from the amended complaint of the plaintiff, Carol J. Howard ("Howard"). As it must, at this early stage of the proceedings, the Court construes those facts in the light most favorable to the non-moving party. See De'Ionta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013).

Howard is the longtime homeowner of 631 Drummond Street, a property in Clarksburg, West Virginia (Dkt. No. 11 at 3). On September 21, 2009, H. Keith Kesling ("Kesling"), an employee of the City's Code Enforcement Department, served Howard with a notice

**HOWARD v. CITY OF CLARKSBURG**                                    **1:15CV135**

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS [DKT. NO. 12] AND DISMISSING CASE WITH PREJUDICE**

of violation and a condemnation and demolition order. Id. These two documents indicated that Howard's home was unsafe and unfit for human occupancy. Id. The notice of violation also informed Howard of her right to appeal the decision; the Code Enforcement Department advised Howard that her only recourse was to appeal to the City's Board of Building Code Appeals ("BOCA"). Id. at 3-4.

Howard appealed the condemnation and demolition order to the BOCA on October 7, 2009. Id. at 4. At its March 17, 2010, meeting, the BOCA required Howard to remove debris and personal property from the house to enable the City to do a preliminary evaluation. Id. On May 19, 2010, the BOCA advised Howard that Adam Barberio, a Code Enforcement official, would enter the house for an inspection. Id. On July 21, 2010, the BOCA considered Howard's appeal, but made no decisions.[1] Id. Thereafter, during its November 17, 2010 meeting, the BOCA voted unanimously to uphold the demolition of Howard's property. Id. at 5.

Howard appealed the BOCA's decision to the Circuit Court of Harrison County, West Virginia, alleging that the BOCA had failed to give her proper notice of the November 17, 2010, meeting

---

[1] The BOCA allegedly continued Howard's appeal to the September meeting, but the complaint alleges that there appears to be no record of a September, 2010, meeting (Dkt. No. 11 at 5).

**HOWARD v. CITY OF CLARKSBURG**　　　　　　　　　　　　　　　　　　**1:15CV135**

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS [DKT. NO. 12] AND DISMISSING CASE WITH PREJUDICE**

[hereinafter Howard I].  Id.; see also Dkt. No. 13-1 at 1.  On February 25, 2011, the Circuit Court dismissed Howard I and affirmed the City's Condemnation and Demolition Order.  Id.  On October 5, 2011, the Clarksburg Municipal Court entered a condemnation and demolition order authorizing city officials to enter the property and prepare for demolition.  Id.

On March 23, 2012, Howard filed a second lawsuit in the Circuit Court of Harrison County, again challenging the BOCA's decision to condemn and demolish her property [hereinafter Howard II].  Id.  The Circuit Court dismissed Howard II on res judicata grounds, reaffirming the validity of the BOCA's decision.  Id.; see also Dkt. No. 13-1 at 23.

On July 18, 2013, the City Council adopted Resolution No. 13-R21, which declared certain areas of the city to be slum or blighted.[2]  Id. at 2.  The resolution listed Howard's home as one of the slum or blighted properties to be demolished.  Id. at 2-3.

---

[2] On August 21, 2013, Howard filed in this Court a third lawsuit challenging the condemnation and demolition order, Civil Action No. 1:13CV189 [hereinafter Howard III].  On March 19, 2014, the Court adopted the report and recommendation of the Honorable John S. Kaull, United States Magistrate Judge, and dismissed the case on jurisdictional and res judicata grounds (Case No. 1:13CV189, Dkt. Nos. 18, 20).

3

**HOWARD v. CITY OF CLARKSBURG**                                          **1:15CV135**

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS [DKT. NO. 12] AND DISMISSING CASE WITH PREJUDICE**

On July 17, 2015, Howard filed suit in the Circuit Court of Harrison County, West Virginia, alleging five causes of action: (1) municipal liability pursuant to 42 U.S.C. § 1983; (2) general civil rights allegations pursuant to 42 U.S.C. § 1983; (3) failure to implement proper policies, customs, and practices, pursuant to 42 U.S.C. § 1983; (4) violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983; and, (5) negligent hiring, retention, training, and supervision (Dkt. No. 1-1 at 4-13). On August 11, 2015, the City removed the case, invoking this Court's federal question jurisdiction (Dkt. No. 1 at 1-2).

The City moved to dismiss the complaint on August 18, 2015 (Dkt. No. 3). To avoid unnecessary motion practice, on October 16, 2015, the Court directed Howard to file an amended complaint (Dkt. No. 10), which she did on October 26, 2015. The amended complaint alleged the same five causes of action contained in the original complaint (Dkt. No. 11). On November 9, 2015, the City moved to dismiss the amended complaint on four grounds: (1) res judicata; (2) the statute of limitations; (3) laches; and, (4) insufficient pleading (Dkt. No. 12). After completion of briefing, the Court heard oral argument on the motion to dismiss on January 7, 2016.[3]

---

[3] At that hearing, the Court ruled that it would not dismiss the complaint on res judicata grounds. This Memorandum Opinion and

4

**HOWARD v. CITY OF CLARKSBURG**                                    1:15CV135

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS [DKT. NO. 12] AND DISMISSING CASE WITH PREJUDICE**

The motion now being fully briefed and ripe for disposition, for the following reasons, the Court **GRANTS** the motion and **DISMISSES** the case **WITH PREJUDICE**.

**STANDARD OF REVIEW**

In reviewing the sufficiency of a complaint, a district court "'must accept as true all of the factual allegations contained in the complaint.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). In considering whether the facts alleged are sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 (quoting Twombly, 550 U.S. at 547).

---

Order therefore addresses the remaining grounds in the City's motion to dismiss.

5

**HOWARD v. CITY OF CLARKSBURG**                                    **1:15CV135**

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS [DKT. NO. 12] AND DISMISSING CASE WITH PREJUDICE**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," so long as "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

## APPLICABLE LAW

A plaintiff who brings a § 1983 action must abide by the applicable state statute of limitations. Sattler v. Johnson, 857 F.2d 224, 226 n. 3 (4th Cir. 1988) (citing McCausland v. Mason Cty. Bd. of Educ., 649 F.2d 278, 279 (4th Cir. 1981). In West Virginia, "[e]very personal action for which no limitation is otherwise prescribed shall be brought (a) [w]ithin two years next after the right to bring the same shall have accrued, if it be for damage to property . . . ." W. Va. Code § 55-2-12(a).

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS [DKT. NO. 12] AND DISMISSING CASE WITH PREJUDICE**

A federal civil rights claim accrues when "the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" A Society Without A Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) (quoting Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)). If harm results from a series of acts or omissions, the continuing violation doctrine may apply, and the limitations period begins to run from the last violation. Green v. Rubenstein, 644 F. Supp. 2d 723, 747 (S.D.W. Va. 2009).

For the continuing violation doctrine to apply, a plaintiff generally must establish that the unconstitutional or illegal act "was a fixed and continuing practice." A Society Without A Name, 655 F.3d at 348 (quoting Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir. 1991) (quotation marks omitted)). Allegations of entirely new violations do not implicate the continuing violation doctrine; rather, the same alleged violation must occur at the time of each act. Id.

Importantly, a continuing violation "is occasioned by continual unlawful acts, not continual ill effects from an original violation." City of Raleigh, 947 F.2d at 1166 (quoting Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981) (internal quotation marks omitted)); see, e.g., A Society Without A Name, 655 F.3d at 348-49 (differentiating between a continuing violation and the

7

**HOWARD v. CITY OF CLARKSBURG**                             **1:15CV135**

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS [DKT. NO. 12] AND DISMISSING CASE WITH PREJUDICE**

continual effect of the original violation); Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180, 189 (4th Cir. 1999) (holding that every subsequent refusal to reconsider the original violation does not "revive the limitations period" as a continuing violation).

## ANALYSIS

The Court must consider whether Howard's complaint, filed on July 17, 2015, is subject to dismissal under the statute of limitations. The City contends that Howard's amended complaint is premised entirely on the September 21, 2009, code enforcement action, which occurred over three years before July 17, 2013, thereby implicating the statute of limitations (Dkt. No. 13 at 12, 14). Howard contends that the City has mischaracterized her claims, which she asserts stem from the July 18, 2013, resolution of the City Council declaring her property slum or blight (Dkt. No. 14 at 8-9).

A careful review of the factual allegations in Howard's complaint belies her contention. In point of fact, all of her allegations stem from or predate the City's September 21, 2009, code enforcement action. Among those allegations are the following: (1) that the City adopted and established building code enforcement policies in 2003 and 2009 that led to deprivations of

8

**HOWARD v. CITY OF CLARKSBURG**                                    **1:15CV135**

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS [DKT. NO. 12] AND DISMISSING CASE WITH PREJUDICE**

Howard's property rights; (2) that the City failed to properly train or certify its building inspectors, leading to the unlawful notice of violation and condemnation and demolition order; (3) that on April 16, 2009, the City amended its building code to impermissibly alter the makeup of the BOCA, leading to the deprivation of Howard's Fifth and Fourteenth Amendment rights; (4) that the City conducted an unlawful inspection, assessment, and seizure of Howard's property; (5) that the City allowed uncertified, unlicensed employees, working as building inspectors, to deem Howard's property unfit and remove her from the property; and, (6) that building inspectors, including Kesling, misrepresented their qualifications to obtain certification as building code officials, which led to illegal notices of violations, condemnations, and demolitions (Dkt. No. 11 at 6-9).

Although Howard alleges that the City relied upon all of these earlier violations when it declared her property slum or blight in the 2013 resolution, id. at 9, the real injury of which she complains occurred when the BOCA, acting on behalf of the City, issued its condemnation and demolition order in 2009. The legal effect of the 2013 resolution was merely to declare Howard's property "slum" or "blight" to obtain funding for demolition (Dkt. No. 11-1 at 1).

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS [DKT. NO. 12] AND DISMISSING CASE WITH PREJUDICE**

The City is authorized to adopt ordinances regulating the vacating and demolition of any building that is unfit for human habitation, unsafe, unsanitary, dangerous, or detrimental to the public safety or welfare. W. Va. Code § 8-12-16. To that end, the City requires that owners of dwellings or structures comply with a notice of violation or demolition order. <u>Old Home Properties, LLC v. City of Clarksburg</u>, No. 14-0928, 2015 WL 7628719, at *6 (W. Va. Nov. 20, 2015) (internal citations omitted). If the property owner fails to comply, the building inspector or his representative "shall cause the structure to be demolished or removed, either through City forces, any available public agency or by contract or arrangement with a private demolition contractor . . . ." <u>Id.</u> If the City incurs any costs in demolishing the condemned structure, the property owner "shall reimburse and pay the City. . . ." <u>Id.</u>

At oral argument, Howard's counsel explained that the 2013 resolution permitted the City to receive loan funding, which had previously been unavailable, to demolish Howard's property.[4] The

---

[4] This understanding is supported by the minutes from the July 18, 2013, City Council meeting. There, City Manager Martin Howe explained that the City would provide the list of slum or blighted properties to the Urban Renewal Authority, which would amend its redevelopment plan to include those properties. <u>See</u> City of Clarksburg, July 18, 2013, Meeting Minutes, *available at* http://www.cityofclarksburgwv.com/a-public-invitation?start=140 (last accessed Jan. 8, 2016).

**HOWARD v. CITY OF CLARKSBURG**                                1:15CV135

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS [DKT. NO. 12] AND DISMISSING CASE WITH PREJUDICE**

parties agreed that the City could have utilized the 2009 condemnation and demolition order to demolish Howard's property when her appeal rights ran out in 2009 or 2010. See also In re Sprouse, No. 03-3134, 2008 WL 1767727, at *2 (Bankr. N.D.W. Va. Apr. 15, 2008) (noting that, although the City had condemned a piece of property some time ago, it had not yet demolished that property due to insufficient funds). Given this background, it is clear that the 2013 resolution was a continuing ill effect of the City's allegedly illegal actions in 2009, and not a continuing violation.

In City of Raleigh, the United States Court of Appeals for the Fourth Circuit distinguished between an initial, allegedly illegal act and the continuing ill effects of that act. 947 F.2d at 1167. There, Raleigh had passed an ordinance on October 18, 1983, to regulate the size and location of certain signs. Id. at 1160-61. The ordinance included a 5.5 year grace period, at the end of which nonconforming signs were required to be removed. Id. at 1161. On January 6, 1989, Raleigh wrote National Advertising, notifying it that its nonconforming signs would have to be removed by April, 1989. Id. at 1161, 1167.

On April 28, 1989, one month after the 5.5 year grace period expired, National Advertising sued, seeking compensation for what

**HOWARD v. CITY OF CLARKSBURG** 1:15CV135

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS [DKT. NO. 12] AND DISMISSING CASE WITH PREJUDICE**

it claimed was a taking. Id. at 1161. Raleigh immediately moved for summary judgment, claiming that National Advertising had failed to file suit within the applicable three-year statute of limitations. Id. National Advertising argued that it didn't suffer injury until Raleigh applied the 1983 ordinance against it, 5.5 years later. Id. Alternatively, it claimed that Raleigh had created a continuing constitutional violation by applying the 1983 ordinance against it in its January, 1989 letter. Id.

The Fourth Circuit rejected both of Raleigh's contentions, holding that the violation had occurred when the ordinance was adopted, and that no continuing illegal acts occurred. Id. at 1164, 1166. The Court distinguished the case, where Raleigh had reminded National Advertising that its nonconforming signs would have to be removed after the grace period, from one where a regulation was continuously applied within the limitations period. Id. at 1166-67. Unlike the latter, it found that any harm to American National stemmed from the initial application of the 1983 regulatory prohibition. Id. "This is not an instance of a statute's repeated enforcement against different individuals or even the same parties, but of a statute applied once to a discrete set of individuals with a foreseeable, ascertainable impact." Id. at 1167.

**HOWARD v. CITY OF CLARKSBURG** 1:15CV135

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS [DKT. NO. 12] AND DISMISSING CASE WITH PREJUDICE**

Similarly, Howard's argument here that the 2013 resolution was a continuing violation lacks merit. Any harm to her occurred in 2009, when she received the BOCA's condemnation and demolition order. At that time, the City could have demolished her property had it possessed the funds to do so. The 2013 resolution merely provided the City with the funding to effectuate its 2009 order. "[E]very refusal to reconsider the [decision] does not revive the limitations period for the original . . . decision. To do so would upset the balance struck by the limitations period between the reasonable needs of individual claimants and the public interest in finality." Jersey Heights, 174 F.3d at 189. The 2013 resolution was therefore a continuing ill effect of the 2009 condemnation and demolition order.

This finding compels the conclusion that Howard has failed to plead a claim for relief that is "plausible on its face" because she filed this case, her fourth lawsuit on the topic, out of time. Anderson, 508 F.3d at 188. The statute of limitations began to run on September 21, 2009, when the City served her with the notice of violation and condemnation and demolition order. The latest date on which it could have begun to run was October 5, 2011, when the Clarksburg Municipal Court entered a condemnation and demolition order authorizing city officials to enter the property to prepare

13

**HOWARD v. CITY OF CLARKSBURG**                                    1:15CV135

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANT'S MOTION TO
DISMISS [DKT. NO. 12] AND DISMISSING CASE WITH PREJUDICE**

for demolition following Howard's unsuccessful appeal. Howard did not file her complaint until July 17, 2015, more than five years after the City had served its condemnation and demolition order, and more than three years after the Municipal Court had entered its order.

## CONCLUSION

After carefully considering the issues raised by the parties, for the reasons discussed, the Court **GRANTS** the City's motion to dismiss (Dkt. No. 12) and **DISMISSES** the case **WITH PREJUDICE**.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Order to counsel of record and to enter a separate judgment order. It further directs the Clerk to remove this case from the Court's active docket.

DATED: January 14, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE